# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| **UTARAA KING,** | |
| *Plaintiff,* | Case No.: 8:21-cv-1277 |
| v. | |
| **ADVANTAGE CREDIT, INCORPORATED**, | **JURY TRIAL DEMANDED** |
| *Defendant.* | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **Utaraa King** ("**Ms. King**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendant, **Advantage Credit, Incorporated** ("**Advantage Credit**"), stating as follows:

## PRELIMINARY STATEMENT

1. This is an action brought by Ms. King against Advantage Credit for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et. seq.* ("**FCRA**").

## JURISDICTION

2. Subject matter jurisdiction arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331, as the FCRA is a federal statute.

3. Advantage Credit is subject to the provisions of the FCRA and is subject to the jurisdiction of this Court pursuant to Fed. R. Civ. P. 4(k)(1)(A) and Section 48.193, Florida Statutes.

4. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to this cause of action occurred in Florida's Middle District.

## PARTIES

5. **Ms. King** is a natural person residing in Hillsborough County, Florida and a consumer as defined by the FCRA, 15 U.S.C. § 1681a(c).

6. **Advantage Credit** is a Colorado corporation with a primary business address of 32065 Castle Court, Suite 300, Evergreen, CO 80439.

7. Advantage Credit's Registered Agent is **Donald Unger, 32065 Castle Court, Suite 300, Evergreen, CO 80439.**

8. Advantage Credit is a *Consumer Reporting Agency* ("**CRA**") within the meaning of 15 U.S.C. § 1681a(f), in that, for monetary fees, dues, and/or on a cooperative nonprofit basis, it regularly engages, in whole or in part, in the practice of assembling and evaluating consumer credit information for the purpose of furnishing consumer reports to third parties and uses means of interstate commerce, including the postal mail and internet, for the purpose of preparing and furnishing these consumer reports.

## FACTUAL ALLEGATIONS

### Report Claims Positive Account Is 'In Collection'

9. On or about April 8, 2021, Ms. King applied for a mortgage to purchase a new home with Nationwide Loans, Inc. ("Nationwide Loans").

10. Nationwide Loans, in response to her application for credit, requested a consumer credit report regarding Ms. King from Advantage Credit.

11. Upon receipt of Nationwide Loans' request, Advantage Credit assembled a report which contained credit information regarding Ms. King.

12. The data was supplied by Equifax Information Solutions ("Equifax"), a nationwide CRA, and then re-formatted and enhanced by Advantage Credit.

13. Advantage Credit then furnished the composite report to Nationwide Loans. A redacted copy of this consumer report is attached as **Plaintiff's Exhibit A**.

14. The report Advantage Credit furnished to Nationwide Loans indicated that Ms. King had an account with Florida Automobile Finance, a long-defunct automobile financing company. *Id.*

15. Florida Automobile Finance reported that Ms. King had obtained a loan of $11,874, opened on October 20, 2005.

16. Ms. King and her co-signer finished paying the loan to Florida Automobile Finance in 2006.

17. Ms. King's Florida Automobile Finance loan was not referred to a collection agency at any point, nor was it charged to profit and loss, a designation which means payment was not received for 180 days or longer and is deemed a likely loss to the lender.

18. Florida Automobile Finance appears to have discontinued operations sometime in 2010.  Records from the Florida Secretary of State show Florida Automobile Finance was incorporated on August 12, 1988 and administratively dissolved for failure to file an annual report on September 24, 2010.

19. Nonetheless, Equifax claims to have received a report from Florida Automobile Finance on **July 31, 2015.  See Plaintiff's Exhibit B.**

20. The information furnished to Equifax indicated that the account had no negative payment history, no reported balance owed, and no date of first delinquency (e.g., no date in which the account had been reported delinquent). *Id.*

21. The report indicated the payment terms were weekly, for a period of nine months. *Id.*

22. On the report produced by Advantage Credit, the Florida Automobile Finance appears as "FLA AUTO."

23. Despite the fact that the subject loan was never delinquent, and Equifax was not reporting it as delinquent, Advantage Credit placed the "FLA AUTO" tradeline under the "Collection/Charge-Off" header, meaning the

account was – ostensibly – being reported to Equifax as a highly adverse, negative item, one that was so far past due as to be referred to a collection agency or charged to profit and loss. **See Plaintiff's Exhibit A**.

24. The status of the account was reported as "SCNL." *Id.*

25. The report contained no key or glossary which defined what "SCNL" means.

26. No reasonable reader of Ms. King's report would understand what "SCNL" means, as the term is not a common abbreviation or acronym.

27. Apparently, SCNL means "customer unable to locate consumer," meaning that – assuming, *arguendo*, Equifax's reporting is accurate – nearly a decade after the loan was repaid, and nearly five years after Florida Automobile Finance terminated operations, Florida Automobile Finance nonetheless made an updated report on the loan indicating it could no longer "locate" Ms. King, its customer.

28. Even if Advantage Credit somehow believed the Florida Automobile Finance was appropriately considered an adverse item which should have been listed as a collection or charge-off, the inclusion of a 9-month loan from 2005 which contained adverse information would be well beyond the running of the seven-year reporting period prescribed by 15 U.S.C. § 1681c(a)(4).

29. Ms. King's Equifax FICO® score on Equifax was 665, well above the 620 required by Ms. King's lender for approval for a home loan backed by the Federal Housing Administration ("FHA").

30. Specially, and only, because of what appeared to be a collection or charge-off on a car loan on Ms. King's credit history, as reported by Advantage Credit, Ms. King's lender was unable to approve her for a home loan.

### Failure to Use Reasonable Procedures When Assembling Reports

31. When merging and assembling its composite report concerning Ms. King, Advantage Credit was required by the FCRA, 15 U.S.C. § 1681e(b), to use reasonable procedures to ensure maximum possible accuracy of the reports produced.

32. Despite the fact that the data Advantage Credit's report was based off, provided by Equifax, did not indicate any adverse payment history, Advantage Credit nonetheless listed it as a "collection/charge-off."

33. Procedures which allow for the inclusion of positive, non-adverse information under a header of highly adverse information, are inherently unreasonable.

34. The use of the "SCNL" status designator – a term which even to industry insiders is, at best, cryptic – is also inherently unreasonable, since a reasonable reader of the report would assume, upon seeing the tradeline listed as

a "collection/charge-off" that "SCNL" refers to some sort of derogatory payment status.

35. Even assuming, *arguendo*, "SCNL" is the correct status of the Florida Automobile Finance tradeline, without explanation as to what "SCNL" means, Advantage Credit failed to utilize reasonable procedures to ensure maximum possible accuracy of its reports since the omission of data required to reasonably understand a report in unreasonable. *See., e.g., Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009) (holding that a consumer report is inaccurate if it is factually accurate but misleading, for example, because it omits certain information).

36. Advantage Credit's inclusion of information highly prejudicial against Ms. King -- that she had a car loan referred to collection or charged off, when she did not – thus entailed an unjustifiably high risk of harm to Ms. King.

37. Advantage Credit's conduct has caused Ms. King to suffer severe emotional distress, loss of credit, and damage to reputation, as well as the denial of the use and enjoyment of a home, and the equity in applying payments to a home purchase long term.

38. Ms. King has hired the undersigned law firm to represent her in this matter and is obligated to pay its reasonable fees.

## COUNT I
## ADVANTAGE CREDIT'S VIOLATIONS OF THE FCRA

39. Ms. King adopts and incorporates paragraphs 1 – 38 as if fully stated herein.

40. Advantage Credit violated 15 U.S.C. § **1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of a consumer report, as Advantage Credit's procedures resulted in the inclusion of demonstrably false information in a consumer report sold regarding Ms. King – that Ms. King had a car loan from Florida Automobile Finance which had been reported as either assigned to a collection agency or charged off – when Advantage Credit knew no negative payment history on the account existed and, indeed, the tradeline was a positive account, not an adverse one.

41. Advantage Credit violated 15 U.S.C. § **1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of a consumer report, as Advantage Credit's procedures resulted in the inclusion of false, inaccurate and misleading information, to wit, the Florida Automobile Finance had an account status of "SCNL," without any explanation as to what this term means, or *why* it is considered adverse.

42. Advantage Credit has prior knowledge through consumer lawsuits and disputes that it frequently sells reports which falsely indicate positive accounts are negative.

43. Advantage Credit could easily make technological and procedural adjustments to prevent these errors, but instead elects to take what it believes is a more cost-effective route of fixing only the reports for which it receives complaints.

44. As such, Advantage Credit's actions were willful and intentional, or, alternately, performed with reckless disregard for its duties under the FCRA to provide reports with maximum possible accuracy.

45. As a result of its conduct, Advantage Credit is liable to Ms. King pursuant to the FCRA for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Ms. King respectfully requests this Honorable Court enter judgment against Advantage Credit for:

a. The greater of statutory damages of **$1,000** per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. §1681o(a)(1), or; Ms. King's actual damages for loss of credit opportunities and related economic and non-economic injuries;

b. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3);

c. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); and,

d. Such other relief that this Court deems just and proper.

## **JURY TRIAL DEMANDED**

Ms. King hereby demands a trial by jury on all issues so triable.

Respectfully submitted May 26, 2021, by:

>                     */s/ Bryan J. Geiger*
> Bryan J. Geiger, Esq.
> Florida Bar No. 119168
> Seraph Legal, P.A.
> 1614 N. 19th St.
> Tampa, Florida 33605
> Phone: 813-321-2347
> Fax: (855) 500-0705
> BGeiger@SeraphLegal.com
> *Counsel for Plaintiff*

## EXHIBIT LIST

| | |
|---|---|
| A | Plaintiff's Advantage Credit Consumer Report, April 8, 2021, Excerpt |
| B | Plaintiff's Equifax Consumer Disclosure, May 11, 2021, Excerpt |